IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

SCOTT DENING, an individual,

    Plaintiff,

v.

GLOBE LIFE AMERICAN INCOME DIVISION a/k/a AMERICAN INCOME LIFE INSURANCE COMPANY, and GLOBE LIFE INC.

    Defendants.

Civil Action No. 1:23-CV-1117

## AMERICAN INCOME LIFE INSURANCE COMPANY'S ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIM

Pursuant to Rule 8 of the Federal Rules of Civil Procedure, American Income Life Insurance Company ("AIL") hereby answers the Complaint filed by Plaintiff Scott Dening[1] ("Plaintiff"). Unless otherwise admitted, all allegations requiring a response are denied.

    1.    Scott Dehning is an individual residing in Ingham County, Michigan.

**Response**: AIL lacks sufficient knowledge or information to form a belief regarding the truth of the allegations in Paragraph 1 and therefore denies the same.

    2.    Globe Life American Income Division, a/k/a American Income Life Insurance Company ("Defendant" or "AIL") is a Texas corporation and operates throughout the United States, including this judicial district.

**Response**: AIL denies the allegations in Paragraph 2.

---

[1] On information and belief, and based on employment records, the correct legal spelling of Plaintiff's last name is "Dehning."

1

3. AIL is a financial services business which includes selling life insurance products to consumers nationwide.

**Response**: AIL admits that AIL is a provider of life, accident, and supplemental health insurance. AIL denies the remaining allegations in Paragraph 3.

4. AIL is an insurance company registered with the National Association of Insurance Commissioners.

**Response**: AIL admits that AIL is registered with the National Association of Insurance Commissioners. AIL denies the remaining allegations in Paragraph 4.

5. Globe Life Inc. ("Globe Life") is a Texas corporation with headquarters located at 3700 Stonebridge Drive, McKinney, Texas 75070.

**Response**: AIL admits that Globe Life Inc. ("Globe Life")'s principal place of business is 3700 Stonebridge Dr., McKinney, Texas 75070. AIL denies the remaining allegations in Paragraph 5.

6. Globe Life is a publicly owned financial services business listed on the New York Stock Exchange (NYSE: GL).

**Response**: AIL admits that public shares of Globe Life are listed on the New York Stock Exchange (NYSE: GL). AIL denies the remaining allegations in Paragraph 6.

7. Globe Life is the parent corporation of AIL and operates throughout the United States, including this judicial district.

**Response**: AIL admits that AIL is a wholly owned subsidiary of Globe Life. AIL denies the remaining allegations in Paragraph 7.

## JURISDICTION AND VENUE

8. This Court has jurisdiction over this matter as the matter involves an amount in controversy in excess of Twenty-Five Thousand Dollars ($25,000.00).

**Response**: Paragraph 8 contains legal conclusions to which no response is required. To the extent a response is necessary, AIL admits only that Plaintiff is seeking economic damages of more than $25,000.00. AIL denies Plaintiff is entitled to any relief whatsoever.

9. This Court has jurisdiction over the Defendants pursuant to M.C.L. § 600.711 and/or § 600.715.

**Response**: Paragraph 9 contains legal conclusions to which no response is required. To the extent a response is necessary, AIL admits that AIL and Globe Life properly removed this action to the United States District Court for the Western District of Michigan, which has jurisdiction over the above-captioned matter, but denies all other allegations in Paragraph 9.

10. Venue is proper in this Court pursuant to M.C.L. § 600.1621 and § 600.1627. Plaintiff resides in this judicial district, the events giving rise to Plaintiff's claims occurred within this district, and the Defendants do business in this district.

**Response**: Paragraph 10 contains legal conclusions and legal arguments to which no response is required. To the extent a response is required, AIL admits that venue is proper in this Court, but denies all other allegations in Paragraph 10.

## BACKGROUND

11. Plaintiff is a 62-year-old male residing in Ingham County, Michigan.

**Response**: AIL lacks sufficient knowledge or information to form a belief regarding the truth of the allegations in Paragraph 11 and therefore denies same.

12. Plaintiff was employed by the Corporate Defendants from May 2012 to May 19, 2023, approximately.

**Response**:  AIL admits that Plaintiff was employed by AIL from April 30, 2012 to May 19, 2023.  AIL denies the remaining allegations in Paragraph 12.

13. From May 2012 through September 2015, approximately, Plaintiff worked as a Home Office Director of Sales ("Director of Sales") on behalf of Defendants.

**Response**:  AIL denies the allegations in Paragraph 13.

14. Plaintiff thrived in the Director of Sales role and was recognized by Defendants as "Director of the Year" in 2015.

**Response**:  AIL admits that AIL gave Plaintiff a "Director of the Year" award in 2015.  AIL denies the remaining allegations in Paragraph 14.

15. Plaintiff's role continued to grow in responsibility and was promoted to Vice President of Field Operations in September 2015, approximately.

**Response**:  AIL admits that Plaintiff was promoted to Vice President of Field Operations effective February 18, 2016.  AIL denies the remaining allegations in Paragraph 15.

16. Plaintiff worked in the Vice President of Field Operations role from September 2015 through May 19, 2023, approximately.

**Response**:  AIL admits that Plaintiff's title was Vice President of Field Operations from February 18, 2016 until May 19, 2023.  AIL denies the remaining allegations in Paragraph 16.

17. Plaintiff continued to perform at a high level in the Vice President role and was recognized as "#2 Vice President" for years 2019 and 2020.

**Response**:  AIL denies the allegations in Paragraph 17.

18. In his capacity as Vice President of Field Operations, Plaintiff was responsible for supervising and managing a team of Directors (approximately three in number) and State General Agents (approximately seventeen in number), i.e. collectively twenty in number, on behalf of Defendants.

**Response**:  AIL denies the allegations in Paragraph 18.

19. The State General Agents ("SGAs") are the "highest level attributable [with Defendants].  SGAs recruit, contract, and train all levels of Defendants' Agents, and groom them for leadership roles."  See www.ailcareers.com.

**Response**:  AIL denies the allegations in Paragraph 19.

20. During the course and scope of Plaintiff's employment, Plaintiff worked closely with his direct reports as well as the subordinate sales force that comprise Defendants' field operations hierarchy, i.e. Agents, General Agents, Supervising Agents, General Agents (sic), Master General Agents, Regional General Agents, and State General Agents.

**Response**:  AIL denies the allegations in Paragraph 20.

21. In that context, Plaintiff was made aware of numerous instances of unethical and potentially illegal business practices on behalf of Defendants.

**Response**:  AIL denies the allegations in Paragraph 21.

22. Plaintiff learned of Defendants' unethical and potentially illegal sales practices, both through Defendants' customer complaints and reports from sales agents.

**Response**:  AIL denies the allegations in Paragraph 22.

23. In his capacity as Vice President of Field Operations, Plaintiff looked into, investigated or otherwise caused investigations of numerous reports of unethical and potentially illegal sales practices conducted by Defendants' sales agents on a regular basis, including but

5

not limited to practices in violation of MCL § 500.4503.

**Response**: AIL denies the allegations in Paragraph 23.

24. Said investigations revealed a clear pattern of unethical and potentially illegal business practices on behalf of Defendants and Defendants' sales agents.

**Response**: AIL denies the allegations in Paragraph 24.

25. On numerous occasions, Plaintiff escalated the unethical and potentially illegal sales practices revealed by his investigations to Defendants' executive management team, including but not limited to Steven Greer, CEO ("Greer"), David Zophin, President ("Zophin"), Joel Scarboro, General Counsel ("Scarboro"), and Debbie Gamble, Senior Vice President ("Gamble").

**Response**: AIL denies the allegations in Paragraph 25.

26. On numerous occasions, Defendants' executive management team chose to ignore, cover up or otherwise conceal the unethical and potentially illegal sales practices reported by Plaintiff with an estimated worth of over $2M in sales revenue.

**Response**: AIL denies the allegations in Paragraph 26.

27. Defendants' executive management team would typically ignore, cover up, or otherwise conceal the unethical and potentially illegal sales practices of the higher ranking, higher revenue generating sales agents, to Defendants' financial benefit.

**Response**: AIL denies the allegations in Paragraph 27.

28. As time went on, Plaintiff's concerns about Defendants' unethical and unlawful business practices continued to grow.

**Response**:  AIL lacks sufficient knowledge or information to form a belief regarding the truth of the allegations in Paragraph 28 related to Plaintiff's concerns and therefore denies the same. AIL denies the remaining allegations in Paragraph 28.

29.     Frequently, Plaintiff would tell the executives that he feared their practice of ignoring, covering up, or otherwise concealing unethical and potentially illegal business practices violated the law.

**Response**:  AIL denies the allegations in Paragraph 29.

30.     For example, in 2022, Plaintiff told Defendants' executives that he feared Defendants would ultimately lose their state issued insurance licenses as a result of the Defendants' ongoing illegal conduct.

**Response**:  AIL denies the allegations in Paragraph 30.

31.     Despite Plaintiff's ongoing reports of unethical and fraudulent sales practices, Defendants' executive management team continued to ignore, conceal or otherwise coverup Plaintiff's reports and the underlying illegal business activities.

**Response**:  AIL denies the allegations in Paragraph 31.

32.     On or about September 2022, Plaintiff began reporting Defendants' fraudulent sales practices to the Michigan Department of Insurance ("MDOI").

**Response**:  AIL lacks sufficient knowledge or information to form a belief regarding the truth of the allegations in Paragraph 32 regarding any reports made by Plaintiff to the Michigan Department of Insurance ("MDOI") and therefore denies the same.  AIL denies the remaining allegations in Paragraph 32.

33.     On or about November 2022, Defendants' executive management team met with Plaintiff to discuss an investigation commenced by the MDOI.

7

**Response**:  AIL denies the allegations in Paragraph 33.

33. At that time, Greer, Zophin, Scarboro, and Gamble informed Plaintiff that the MDOI had commenced an investigation with regard to Defendants' insurance sales practices.

**Response**:  AIL denies the allegations in Paragraph 34.

35. At the end of the meeting, Scarboro instructed Plaintiff to "stop talking to your friend(s)", referring to the MDOI investigators.

**Response**:  AIL denies the allegations in Paragraph 35.

36. Thereafter, the Defendants' executive management team expressed clear displeasure with Plaintiff's protected conduct by refusing to acknowledge him in meetings and other work settings, for example.

**Response**:  AIL denies the allegations in Paragraph 36.

37. Plaintiff believes and avers that the source of the executives' ire was none other than the fact that Plaintiff refused to participate/tolerate unethical and unlawful behavior—a position sanctioned by the Defendants, under the direction and control of the executive management team.

**Response**:  AIL lacks sufficient knowledge or information to form a belief regarding the truth of the allegations in Paragraph 37 regarding Plaintiff's beliefs and therefore denies the same. AIL denies the remaining allegations in Paragraph 37.

38. On May 19, 2023, Plaintiff was abruptly terminated without warning.

**Response**:  AIL admits that Plaintiff was terminated on May 19, 2023.  AIL denies the remaining allegations in Paragraph 38.

39. The only basis cited by Defendants for Plaintiff's termination was that he was "a risk to the company."

**Response**:  AIL denies the allegations in Paragraph 39.

## COUNT I

**WRONGFUL DISCHARGE IN VIOLATION OF MICHIGAN WHISTLEBLOWERS PROTECTION ACT**

40. Plaintiff incorporates by reference the allegations in Paragraph 1 through 40 above.

**Response**:  Paragraph 40 contains a conclusory statement to which no response is required.  To the extent necessary, AIL incorporates the preceding responses to all paragraphs as if fully set forth herein.

41. Plaintiff's conduct, including but not limited to reporting Defendants' unethical and unlawful business practices constitutes protected activity pursuant to the Michigan Whistleblowers Protection Act, MCL 15.361 *et seq*. ("MWPA").

**Response**:  AIL denies the allegations in Paragraph 41.

42. Defendants' decision to terminate Plaintiff and irrevocably change the terms and conditions of his employment, was because the Plaintiff reported violations and or suspected violations of numerous laws, standards, and/or regulations to the MDOI which is a public body within the meaning of the Michigan Whistleblowers Protection Act, MCL 15.362(d)(v).

**Response**:  AIL denies the allegations in Paragraph 42.

43. Defendants' decision to terminate Plaintiff is causally connected to Plaintiff engaging in the aforementioned protected activity.

**Response**:  AIL denies the allegations in Paragraph 43.

44. As a direct and proximate result of the change in the terms and conditions of his employment, Plaintiff has suffered damages including but not limited to loss of physical well-

being, anxiety, stress, depression, loss of income, income opportunities, and benefits, humiliation, emotional distress, attorney fees and associated expenses.

**Response**:  AIL denies the allegations in Paragraph 44.

## PLAINTIFF'S REQUEST FOR RELIEF

WHEREFORE, Plaintiff prays for such damages as may be deemed to be just and fair at the time of trial of this cause, including reasonable attorney fees, the damages in each instance to be in excess of Twenty-Five Thousand ($25,000.00) Dollars.

**Response**: Responding to Plaintiff's unnumbered paragraph requesting relief, AIL denies that Plaintiff is entitled to any of the relief sought.

## AFFIRMATIVE DEFENSES

AIL pleads the following separate and distinct affirmative defenses without conceding that AIL bears the burden of proof as to any of these issues. AIL reserves the right to assert additional affirmative defenses or matters of avoidance required by Rules 8(c) and 12(h) of the Federal Rules of Civil Procedure which may be determined applicable to this action through subsequent discovery proceedings or further investigation of the claims and allegations asserted in Plaintiff's Complaint.

## FIRST AFFIRMATIVE DEFENSE

*(Failure to State a Claim)*

1. Plaintiff's allegations fail to state a claim against AIL upon which relief can be granted.

## SECOND AFFIRMATIVE DEFENSE

*(Unclean Hands)*

2. Plaintiff's claims are barred, released, waived, or otherwise precluded in whole or in part by the doctrine of unclean hands.

## THIRD AFFIRMATIVE DEFENSE

*(Waiver)*

3. Plaintiff's claims are barred in whole or in part by the doctrine of waiver.

## FOURTH AFFIRMATIVE DEFENSE

*(Estoppel)*

4. Plaintiff's claims are barred by estoppel, equitable estoppel, and quasi-estoppel.

## FIFTH AFFIRMATIVE DEFENSE

*(Failure to Mitigate)*

5. Plaintiff's claims are barred or reduced by the defenses of setoff, offset, recoupment, and failure to mitigate.

## SIXTH AFFIRMATIVE DEFENSE

**(***Speculative Damages***)**

6. Plaintiff's claims for damages are barred because the alleged damages, if any, are speculative and uncertain.

## COUNTERCLAIM

Defendant/Counterclaimant American Income Life Insurance Company ("AIL") brings the following Counterclaim against Plaintiff/Counter-Defendant Scott Dehning ("Dehning") seeking equitable indemnification for all losses, costs, and expenses that AIL has incurred and will incur in connection with damages suffered by AIL as a result of Dehning's treatment of Angela Ingalls ("Ingalls"), an applicant for employment at AIL, that led to her claims of harassment and retaliation.

## NATURE OF CASE

1. Dehning's wrongful discharge claim against AIL is an ill-conceived attempt to divert from his legitimate termination for his behavior harassing and retaliating against Ingalls after she ended their intimate personal relationship. AIL did not retaliate against Dehning. Rather, Dehning filed a baseless wrongful discharge claim against AIL in retaliation for AIL's justifiable termination of Dehning in response to his conduct related to Ingalls.

2. Between February and October 2022, Dehning was in an intimate personal relationship with Ingalls. Dehning recruited Ingalls to contract with AIL as an independent contractor sales agent, encouraged Ingalls to move into his home, and provided Ingalls with gifts and cash payments to be used for Ingalls' rent and car payments. Dehning also used his executive position to attempt in September 2022 to secure for Ingalls a full-time employment position with AIL, "vouch[ing] 100% on her work ethic and skills," but intentionally hiding from AIL his intimate relationship with Ingalls.

3. In October 2022, Dehning's relationship with Ingalls unraveled and Ingalls would not speak with him. Dehning attempted to use his position of power and his ability to help secure a full-time position with AIL as leverage to keep Ingalls in the relationship. Indeed, Dehning left

12

Ingalls a voicemail in which he threatened: "I need you to think of every single thing that I've done for you. . . . I mean my god I'm letting you keep the jobs. I'm doing still (sic) everything for (sic) to help you. I mean it's the least you could do for me." When Ingalls did not respond to Dehning's pleas, Dehning retaliated against Ingalls by contacting AIL representatives involved with making hiring decisions and stating: "[Y]ou can disregard Angie Ingalls for any position as some things came to light on skill she put down that she does not have and she accepted another position today. Thank you both for doing what you did to help but I cannot back her working here anyways at this point."

4. In January 2023, Ingalls sent a demand letter to AIL asserting claims for sexual harassment, retaliation, and retaliatory harassment, based on Dehning's conduct.

5. AIL denied any wrongdoing, but after an investigation into Dehning's underlying conduct, AIL settled all claims with Ingalls in the amount of $150,000.

## THE PARTIES

6. Dehning is a Michigan resident and was employed by AIL from April 30, 2012 to May 19, 2023. At the time of his termination in May 2023, Dehning had the title of Vice President of Field Operations.

7. AIL is an international provider of life, accident, and supplemental health insurance. AIL is an Indiana corporation with its principal place of business in Texas.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because the matter is between citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs. AIL is a citizen of Texas and Indiana, while Dehning is a citizen of Michigan. The Court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a).

9.  Venue is proper in the United States District Court for the Western District of Michigan under 28 U.S.C. § 1391 because Dehning is located in this District and the events giving rise to this dispute relate to Dehning.

## FACTUAL ALLEGATIONS

10.  Ingalls was an independent sales agent who contracted with AIL to sell AIL's insurance products. Ingalls affiliated with the Chalom Agency from approximately April 26, 2022 through August 3, 2022, and with the Schrieber Agency from July 26, 2022 through November 17, 2022.

11.  Ingalls applied for an employment position with AIL in October 2022 but did not receive the position.

12.  On January 16, 2023, Ingalls, through her attorney, sent a demand letter to AIL asserting claims for sexual harassment, retaliation, and retaliatory harassment, based on the alleged conduct of Dehning.

13.  In the January 16, 2023 demand letter, Ingalls alleged that: 1) Ingalls' submission to Dehning's conduct / sexual advances was made a term or condition, explicitly or implicitly, of Ingalls' ability to obtain employment at the home office; 2) Ingalls' submission to or rejection of Dehning's conduct was used as a factor in Dehning's decisions and actions affecting Ingalls' application for employment with AIL; and 3) Dehning's conduct had the purpose or effect of substantially interfering with Ingalls' application for employment.

14.  According to Ingalls:

   a.  Dehning repeatedly promised Ingalls employment opportunities with AIL and conditioned those opportunities on Ingalls' submission to Dehning's sexual advances.

   b.  Dehning showered Ingalls with lavish gifts, cash, and use of his

Maserati—all while using a potential employment position with AIL as "bait" to pursue a sexual relationship with Ingalls.

   c. Dehning also pressured Ingalls to move into his home. When Ingalls declined to do so, Dehning became irate and retaliatory and withdrew Ingalls' employment application to the home office.

 15. AIL investigated Ingalls' claims and found merit to them. Among other things, AIL found:

   a. Dehning met Ingalls in October 2021 and started an intimate personal relationship with Ingalls in February 2022. From February 2022 through October 25, 2022—the latter being when his personal relationship with Ingalls ended—Dehning frequently corresponded with Ingalls about personal matters, including discussing matters of a sexual nature and encouraging Ingalls to move into his home, and provided Ingalls with gifts and cash payments to be used for Ingalls' rent and car payments.

   b. In February or March 2022, Dehning and Ingalls first discussed Ingalls working as an independent sales agent for AIL. Dehning informed Ingalls that she would need to obtain an insurance license, which she secured on April 7, 2022.

   c. Dehning contacted Josh Chalom of the Chalom Agency on behalf of Ingalls, and Ingalls worked as an independent sales agent affiliated with the Chalom Agency from approximately April 26, 2022 through August 3, 2022.

   d. In the summer of 2022, Ingalls no longer wished to be affiliated with the Chalom Agency and so Dehning contacted Darcy Schrieber at the Schrieber Agency on behalf of Ingalls. Ingalls worked as an independent sales agent affiliated with the Schrieber Agency from July 26, 2022 through November 17, 2022.

   e. Beginning in August 2022, Dehning sent Ingalls' resume to several people

15

at the company to inquire about openings for employment positions and/or to refer Ingalls for existing open positions.

      f.      On September 21, 2022, Dehning sent an email to a Senior Vice President who was looking to fill open licensing clerk positions. Dehning attached Ingalls' resume and recommended Ingalls for the position. Among other things, Dehning stated that Ingalls had "great computer skills and one of the best phones (sic) there is and I know she would be awesome as she is a very close friend of mine!!"

      g.      Dehning deliberately hid from the Senior Vice President his personal and sexual relationship with Ingalls.

      h.      On September 27, 2022, Dehning sent a follow up email to the Senior Vice President stating, "Any word on if you have something for Angie? I know you will be happy with her and can vouch 100% on her work ethic and skills."

      i.      On October 10, 2022, a Senior Manager spoke with Ingalls in general about the department and described the jobs that might be available. The Senior Manager did not make any promises during the discussion, and told Ingalls that she would need to contact Human Resources to fill out an application and be vetted to initiate the application process.

      j.      On October 10, 2022, Dehning sent an email to the Senior Manager to thank her for meeting with Ingalls.

      k.      At some point between October 10, 2022 and October 25, 2022, Dehning and Ingalls had a heated argument regarding Ingalls's interactions with another man that Dehning observed.

      l.      On or around October 15, 2022, Dehning left a voice message on Ingalls' phone. In the voice message, Dehning stated:

- *"All I'm asking for is five minutes. I know you're mad, I'm mad. But come on*

> *I've done so much, we've been through so much.  I mean, c'mon, I've never asked you for anything, anything.  I just need to talk to you."*

- *"At least talk to me, I mean I deserve that, Ang.  **I need you to think of every single thing that I've done for you.**  And you can't give me five minutes because you're mad?  **You think I like giving you $1000 or $800?  No, but I did it because I love you and wanted to help you.**  And now I need help and you're just saying "fuck you", I'm not giving you any because I'm upset?"  (emphasis added).*

- *"**I mean my god I'm letting you keep the jobs.**  I'm doing still (sic) everything for (sic) to help you.  **I mean it's the least you could do for me.**" (emphasis added).*

    m.    On October 25, 2022, Dehning's personal relationship with Ingalls ended.

    n.    On that same day, Dehning sent an email to the Senior Manager and a Human Resources employee stating, "Ladies, you can disregard Angie Ingalls for any position as some things came to light on skills she put down that she does not have and she accepted another position today.  Thank you both for doing what you did to help but ***I cannot back her working here anyways at this point***."  (emphasis added).

    o.    On October 26, 2022, in response to an inquiry from the Senior Manager regarding the change of course, Dehning wrote, "[Ingalls] told me she was good at excel and micosoft (sic) and had computer skills but they are terrible and she literally knows nothing about either.  When I asked what she put on her application she put good which is not the case.  When I told her that was a problem she accepted another job (sic)."

    p.    Dehning again deliberately hid from the Senior Manager his personal and sexual relationship with Ingalls.

17

      q.    On November 17, 2022, AIL learned that Ingalls was appointed with competitor, Patriot Life Insurance, to sell insurance. The Schrieber Agency issued a Notice of Termination to Ingalls the same day.

16.    In light of the findings from its investigation, AIL terminated Dehning on May 19, 2023.

17.    On June 25, 2023, AIL entered into a Settlement Agreement with Ingalls. Pursuant to the Settlement Agreement, AIL paid Ingalls a total of $150,000.

## CLAIM FOR RELIEF: EQUITABLE INDEMNIFICATION

18.    AIL incorporates by reference the allegations in Paragraphs 1 through 17 above.

19.    AIL's investigation into the claims asserted by Ingalls in her January 16, 2023 demand letter revealed that Dehning engaged in misconduct with regard to Ingalls and Dehning was liable to Ingalls in connection with one or more of her claims.

20.    AIL was not at fault for any of the misconduct alleged by Ingalls.

21.    As a result of Dehning's misconduct with regard to Ingalls and Dehning's other wrongful acts, AIL was forced to pay $150,000.

22.    AIL is entitled to restitution by Dehning for the full $150,000 settlement amount that AIL was required to pay to resolve Ingalls's claims.

## PRAYER FOR RELIEF

**WHEREFORE,** AIL prays for the following relief:

a. An award for restitution and/or damages in an amount to be determined at trial and not less than $150,000;

b. An award of all costs, expenses, and attorneys' fees to the extent permitted by statute, contract, or equitable principles; and

    c.  Such other and further relief as the Court may deem just and proper.

Dated: October 30, 2023                                                         Respectfully submitted,


BARNES & THORNBURG LLP

<u>*/s/ Christina M. Janice*</u>
Christina M. Janice (P86372)
171 Monroe Ave., NW, Suite 1000
Grand Rapids, Michigan 49503
(616) 742-3940
christina.janice@btlaw.com

And

KING & SPALDING LLP

Jeffrey Hammer (Pro Hac Vice Forthcoming)
jhammer@kslaw.com
633 West Fifth Street
Suite 1600
Los Angeles, California 90071
(213) 443-4326

Anne R. Dana (Pro Hac Vice Forthcoming)
adana@kslaw.com
1185 Avenue of the Americas
34th Floor
New York New York 10036
(212) 790-5364

Kathleen A. Sacks (Pro Hac Vice Forthcoming)
ksacks@kslaw.com
1700 Pennsylvania Avenue, NW
Suite 900
Washington, DC 20006
(202) 626-2999

*Attorneys for Defendants Globe Life American Income Division aka American Income Life Insurance Company, and Globe Life Ins.*

**PROOF OF SERVICE**

I hereby certify that on this 30th day of October 2023, a copy of the above and foregoing has been served upon all known counsel of Record via email and by filing with the Clerk of Court using the CM/ECF system. A true copy also shall be served via regular U.S. Mail to all known counsel of Record for Plaintiff who do not yet receive electronic service through the Court's CM/ECF system for this matter:

>Amy Williamson
>Williamson Law, LLC
>429 Fourth Avenue, Ste. 300
>Pittsburgh, Pennsylvania 15222
>(412) 600-8862
>awilliamson@awilliamsonlaw.com

>John Kane
>Janice Savinis
>Michael Gallucci
>Savinis, Kane & Gallucci LLC
>436 Seventh Avenue
>Suite 322 Koppers Building
>Pittsburgh, Pennsylvania 15219
>(412) 227-6556
>jkane@sdklaw.com
>jsavinis@sdklaw.com
>mgallucci@sdklaw.com

>/s/ Christina M. Janice
>Christina M. Janice (P86372)
>171 Monroe Ave., NW, Suite 1000
>Grand Rapids, Michigan  49503
>(616) 742-3940
>christina.janice@btlaw.com
>
>*One of the Attorneys for Defendant Globe Life American Income Division aka American Income Life Insurance Company*