UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SCOTT DEHNING,

      Plaintiff,

v.

                                              Case No. 1:23-cv-1117

GLOBE LIFE AMERICAN INCOME
DIVISION, et al.,                              Hon. Hala Y. Jarbou

      Defendants.

_____/

## OPINION

Plaintiff Scott Dehning[1] filed a Michigan Whistleblower Protection Act ("MWPA") lawsuit against Defendants Globe Life American Income Division (also known as American Income Life Insurance Company ("AIL")) and Globe Life, Inc.  Globe Life, Inc. is no longer a defendant in this case.

Dehning claims AIL terminated him unlawfully, in retaliation for reporting potential fraud to the Michigan Department of Insurance and Financial Services ("DIFS").  (Compl., ECF No. 1-2.)  AIL maintains that it terminated Dehning due to violations of the company's harassment policy, unrelated to his DIFS reports.  AIL also filed a counterclaim against Dehning claiming equitable indemnification related to his alleged harassment of an AIL contractor.  (Countercl., ECF No. 8.)

Before the Court are two motions for summary judgment.  Dehning filed a motion for summary judgment on AIL's equitable indemnification counterclaim.  (ECF No. 74.)  AIL filed a

---

[1] While the caption in the initial complaint spells Plaintiff's last name "Dening," subsequent filings and employment records reflect his last name is spelled "Dehning."  The Court will correct the caption to reflect the proper spelling.

motion for summary judgment on Dehning's MWPA claim.  (ECF No. 76.)  For the reasons stated

herein, the Court will grant both motions for summary judgment.

## I. BACKGROUND

Dehning was an AIL employee from 2012 to 2023.  (Dehning Aff. ¶ 2, ECF No. 89-1.)

Dehning claims that while employed with AIL, he witnessed numerous sales representatives

engage in "fraudulent business practices."  (*Id.* ¶ 11.)  In 2021, after discussing his concerns with

supervisors, Dehning reported the alleged fraud to DIFS.  (*Id.* ¶ 13.)  Dehning then informed his

supervisors that he made such reports to DIFS.  (*Id.* ¶ 14.)  In the following months, DIFS

investigated AIL regarding Dehning's allegations; AIL cooperated as part of regular

communication with DIFS, which is typical for companies in the insurance sector.  (Gamble Decl.

¶¶ 5, 7-10.)

In 2022, Dehning was in a relationship with Angie Ingalls.  (Dehning Aff. ¶ 22.)  During

the relationship, Dehning communicated with AIL employees in an effort to help Ingalls obtain

employment with AIL.  (Emails with AIL, ECF No. 90-2, PageID.810-815.)  Ingalls worked as an

independent contractor with AIL from April 26, 2022 to November 17, 2022.  (Ingalls

Settlement 1, ECF No. 93.)  In October 2022, Dehning withdrew his endorsement of Ingalls as a

candidate for full-time employment with AIL.  (Dehning Aff. ¶ 25.)

On or around February 13, 2023, Ingalls sent a demand letter to AIL outlining claims of

harassment by Dehning.  (Demand Letter, ECF No. 90-2, PageID.790.)  Ingalls sought a settlement

with AIL for what she characterized as quid-pro-quo sexual harassment.  (*Id.*)  She presented AIL

with communications purportedly demonstrating that Dehning used his position, and continued

advocacy on her behalf with AIL, as leverage for intimate activities with Ingalls.  (*Id.* at

PageID.791-795.)  Upon receiving the demand letter with the allegations, AIL investigated

Dehning's conduct toward Ingalls, ultimately concluding he violated AIL's harassment policy.

(Zorn Decl. ¶ 7, ECF No. 77-2.)  AIL terminated Dehning on or around May 19, 2023.  (*Id.* ¶ 8.)

On or around June 27, 2023, AIL entered into a settlement agreement with Ingalls.  (Ingalls

Settlement 8, ECF No. 93.)

Dehning claims he was terminated as retaliation for filing reports of fraud to DIFS.  AIL

seeks summary judgment, arguing his termination was lawful.  Separately, AIL claims that

Dehning should be held liable to AIL for its settlement with Ingalls.  Dehning seeks summary

judgment, arguing that AIL is not entitled to equitable indemnification.

## II. STANDARD

### A. Summary Judgment

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as

to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ.

P. 56(a).  A fact is material if it "might affect the outcome of the suit." *Anderson v. Liberty Lobby,

Inc.*, 477 U.S. 242, 248 (1986).  A material fact is genuinely disputed when there is "sufficient

evidence favoring the nonmoving party for a jury to return a verdict for that party."  *Id.* at 249

(citing *First Nat'l Bank of Ariz. v. City Serv. Co.*, 391 U.S. 253, 288-89 (1961)).

Summary judgment is not an opportunity for the Court to resolve factual disputes.

*Anderson*, 477 U.S. at 249.  The Court "must shy away from weighing the evidence and instead

view all the facts in the light most favorable to the nonmoving party and draw all justifiable

inferences in their favor."  *Wyatt v. Nissan N. Am., Inc.*, 999 F.3d 400, 410 (6th Cir. 2021).

## III. ANALYSIS

### A. Dehning's Retaliation Claim

Dehning claims AIL terminated him in retaliation for the complaints he filed to DIFS, a

violation of the MWPA.  The Court analyzes MWPA claims through the "burden-shifting"

framework for "retaliatory discharge claims" under Michigan's Civil Rights Act.  *Taylor v. Mod.*

*Eng'g. Inc.*, 653 N.W.2d 625, 628 (Mich. Ct. App. 2002).  First, the plaintiff must show a prima facie case for retaliation.  *Id.*  If the plaintiff establishes a prima facie case, the burden shifts to the defendant to show a legitimate, nondiscriminatory reason for the adverse employment action.  *Id.*  If the defendant provides a legitimate, nondiscriminatory reason for the adverse action, the burden then shifts back to the plaintiff, who must demonstrate that the defendant's proffered reason is a pretext for discrimination.  *Id.*

To show a prima facie case for retaliation under the MWPA, Dehning must show that (1) he was engaged in a protected activity as defined by the MWPA, (2) he suffered an adverse employment action, and (3) there is a causal connection between his protected activity and the adverse employment action.  *Chandler v. Dowell Schlumberger Inc.*, 572 N.W.2d 210, 212 (Mich. 1998).  For the first element, "reporting to a public body a violation of a law, regulation, or rule" constitutes protected activity.  *Id.*  Dehning reported AIL employees to DIFS for potential fraud in 2021, while he was still employed at AIL, which constitutes a protected activity.  (*See* Dehning Aff. ¶ 15.)  Dehning also satisfies the second element, as his termination is an adverse action.  *See Taylor*, 653 N.W.2d at 628-29.  To satisfy the third element of a prima facie case, Dehning must show a causal connection between his termination and his protected activity.

In order to establish causation, Dehning "must show something more than merely a coincidence in time between protected activity and an adverse employment action."  *West v. Wayne Cnty.*, 672 F. App'x 535, 542 (6th Cir. 2016) (internal punctuation omitted) (quoting *West v. Gen. Motors Corp.*, 665 N.W.2d 468, 473 (Mich 2003)).  "He can do so through circumstantial evidence, but 'the circumstantial proof must facilitate reasonable inferences of causation, not mere speculation.'"  *Id.* (quoting *Shaw v. City of Ecorse*, 770 N.W.2d 31, 40-41 (Mich. Ct. App. 2009)).

Dehning relies on multiple layers of non-declarant statements to insinuate causation.  In

his affidavit, Dehning states:

> David Zophin, President of AIL, set out on a mission to terminate me because of
> my whistleblowing to DIFS.  My immediate supervisor, Dominic Bertini, told me
> on several occasions that Zophin wanted to have me fired because of my actions in
> reporting AIL to DIFS.  He specifically told me that Zophin was out to get me and
> that I better watch out.

(Dehning Aff. ¶ 16.)  There is some question as to whether the Court can consider this assertion in

Dehning's affidavit.  Per Federal Rule of Evidence 801(d)(2)(D), statements made by AIL agents

in the course of business are not hearsay,[2] but Dehning may lack the personal knowledge to

competently speak on behalf of Zophin without pointing to a direct quote from either Bertini or

Zophin.  However, assuming that the Court can take his affidavit at face value, asserting that

"Zophin wanted to have [him] fired because of his action in reporting AIL to DIFS" still does not

establish the causation element.

"For there to be causal connection between an adverse employment decision and a

protected activity, the relevant decision-maker must have actual knowledge of the protected

activity before making the decision." *Burns v. Mahle Engine Components USA, Inc.*, 605 F. App'x

522, 527 (6th Cir. 2015).[3]  Zophin may have wanted Dehning fired, but it was Executive Vice

President and Chief Talent Officer, Rebecca Zorn, who decided to terminate Dehning.  (Zorn

Aff. ¶ 7.)  Zorn claims "the decision to terminate Mr. Dehning [was] for violating AIL's policies

prohibiting harassment and retaliation based on his conduct towards Ms. Ingalls." (*Id.*)  She made

this decision after reviewing the communication between Dehning and Ingalls and investigating

---

[2] Even if the statements do not fit under FRE 801(d)(2)(D), the Court can consider some hearsay at the summary judgment stage so long as the declarant could cure the hearsay issue with testimony at trial.  *Bard v. Brown Cnty.*, 970 F.3d 738, 757 n.12 (6th Cir. 2020).

[3] Dehning does not argue the "cat's paw" theory outlined in *Staub v. Proctor Hospital*, 562, U.S. 411 (2011), in which a decisionmaker is influenced by another employee's animus, applies to his case.  Further, the facts in the record do not support this theory.

the alleged harassment. (*Id.* ¶¶ 4-7.) Zorn asserts that her "decision to terminate Mr. Dehning had nothing whatsoever to do with his reports of alleged misconduct by [AIL employees] or his communications with the [DIFS]." (*Id.* ¶ 9.) When Zorn made the decision to terminate Dehning, she was not aware of his reports to, and contact with, DIFS. (*Id.* ¶ 10.) Dehning presents no evidence that Zophin was involved in the termination process. He argues that Zorn did not have enough evidence to fire him for workplace violations, but even if correct, this does not support his causation argument. *See, e.g.*, *Saulter v. Detroit Area Agency on Aging*, 562 F. App'x 346, 357 (6th Cir. 2014) ("A plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent.") (internal punctuation, citation, and quotation omitted).

Because the ultimate decision maker responsible for the adverse action had no knowledge of Dehning's protected activity, Dehning fails to establish causation. Dehning offers no evidence to connect the dots between his protected activity and his termination, so there are no issues of material fact regarding Dehning's MWPA claim. The Court will grant AIL's motion for summary judgment.

### B. AIL's Equitable Indemnification Claim

AIL claims Dehning should be liable for its settlement payment to Ingalls. It argues that because Dehning's conduct caused Ingalls to send the demand letter, equitable indemnification should apply.

"The right to common-law indemnification is based on the equitable theory that where the wrongful act of one party results in another party's being held liable, the latter party is entitled to restitution for any losses." *Botsford Continuing Care Corp. v. Intelistaf Healthcare, Inc.*, 807 N.W.2d 354, 361 (Mich. Ct. App. 2011) (internal punctuation omitted) (quoting *Lakeside Oakland*

*Dev., LC v. H & J Beef Co.*, 644 N.W.2d 765, 772 (Mich. Ct. App. 2002)).  "The right exists independently of statute, and whether or not contractual relations exist between the parties, and whether or not the negligent person owed the other a special or particular legal duty not to be negligent." *Id.* (internal citation and quotation omitted).  "It has long been held in Michigan that the party seeking indemnity must plead and prove freedom from personal fault.  This has been frequently interpreted to mean that the party seeking indemnity must be free from active or causal negligence."  *Id.* (internal citation and quotation omitted).   "Therefore, a common-law indemnification action 'cannot lie where the plaintiff was even .01 percent actively at fault.'"  *Id.* (quoting *St. Luke's Hosp. v. Giertz*, 581 N.W.2d 665, 669 (Mich. 1998)).

To determine whether the party seeking indemnification is vicariously liable or actively liable "for purposes of determining the availability of common-law indemnity," the Court looks to the "primary plaintiff's complaint." *Id.* (quoting *Parliament Constr. Co. v. Beer Precast Concrete Ltd.*, 319 N.W.2d 374, 377 (Mich. Ct. App. 1982)).  "If the primary plaintiff's complaint contained any allegations of active negligence, rather than merely allegations of passive negligence, common-law indemnification is not available." *Id.*

Here, Ingalls never filed a lawsuit against AIL.  Ingalls merely sent a demand letter outlining potential liability for AIL given Dehning's alleged harassment.  AIL shoulders the burden of proving its entitlement to equitable indemnification.  To succeed, AIL must show the absence of all active negligence.  With no complaint to point to, AIL is unable to meet its burden.

Additionally, there are limited circumstances in which the Court will recognize an equitable indemnification claim when the indemnitor (here, Dehning) was not involved in the settlement negotiations.  Although "notice and opportunity to participate in the settlement is not required to state a claim for indemnity," if "an indemnitor is not afforded the alternative of

participating in a settlement or conducting the defense against the original claim, an indemnitee settling the claim will have the burden of establishing actual liability to the original plaintiff rather than the lesser burden of showing potential liability." *Scheurer Hosp. v. Lancaster Pollard & Co.*, No. 12-11536, 2012 WL 3065347, at \*13 (E.D. Mich. July 27, 2012) (quoting *St. Luke's Hosp.*, 581 N.W.2d at 668 & n.2)).   When a party seeks indemnification after settlement, such indemnification is inappropriate when the indemnitor does not admit fault or fault is not proven. *See N. Cmty. Healthcare, Inc. v. Telford*, 556 N.W.2d 180, 182 (Mich. Ct. App. 1996).  Neither AIL nor Dehning admitted fault as part of the settlement (Ingalls Settlement 5), and AIL cannot claim actual liability for Dehning's conduct based on legal claims that were never filed.  Therefore, AIL has no right to indemnification.

AIL has failed to present evidence establishing a genuine issue of material fact regarding its equitable indemnification claim.  It has not met the legal burden necessary for a ruling in its favor.  The Court will grant Dehning's motion for summary judgment.

## IV. CONCLUSION

Dehning has failed to demonstrate a genuine issue of material fact regarding his MWPA claim; he is unable to establish the causal connection between his protected activity and his termination.  Therefore, the Court will grant AIL's motion for summary judgment.

Likewise, AIL has failed to establish entitlement to equitable indemnification.  Such relief is only available to parties held liable for another's actions.  AIL was never held liable for Dehning's conduct.  The Court will grant Dehning's summary judgment motion.

Both Dehning's claim and AIL's counterclaim will be dismissed.  The Court will enter an order and judgment consistent with this opinion.


Dated: October 11, 2024                          /s/ Hala Y. Jarbou
                                                 HALA Y. JARBOU
                                                 CHIEF UNITED STATES DISTRICT JUDGE